**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| TUFAMERICA, INC. d/b/a TUFF CITY RECORDS, | : | |
| Plaintiff, | : | Case No. 1:24-cv-2585-DEH |
| v. | : | **ORAL ARGUMENT REQUESTED** |
| UNIVERSAL MUSIC PUBLISHING, INC., | : | |
| Defendant. | : | |

---------------------------------------------------------------x

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTS ..... 3

ARGUMENT ..... 5

I. THE MOTION TO DISMISS STANDARD ..... 5

II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER OF LAW.. 7

(a) Plaintiff Fails to Plead that the Works are Substantially Similar. ..... 7

(b) "Real Love" is Not Substantially Similar to the Protectable Portions of "Impeach the President". ..... 9

i. An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach the President" in "Real Love". ..... 9

ii. The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the Works are Not Substantially Similar Because Any Use of Plaintiff's Work is Qualitatively and Quantitatively De Minimis ..... 11

III. THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY ..... 16

IV. PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF ACTION, AND MUST BE DISMISSEED ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998)....11, 12

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....6, 17

*Charles v. Seinfeld*,
410 F. Supp. 3d 656 (S.D.N.Y. 2019)....18

*Effie Film, LLC v. Pomerance*,
909 F. Supp. 2d 273 (S.D.N.Y. 2012)....7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)....7

*Francescatti v. Germanotta*,
No. 11-cv-5270, 2014 WL 2767231 (N.D. Ill. June 17, 2014)....10

*Gottwald v. Jones*,
No. 11-cv-1432, 2011 WL 103414 (S.D.N.Y. Sep. 12, 2011) ....10, 11

*Hines v. Roc-A-Fella Records, LLC*,
No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ....5, 8

*Island Software & Comput. Serv. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005)....7

*Johnson v. Magnolia Pictures LLC*,
No. 18-cv-9337, 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019) ....18, 19

*Knitwaves, Inc. v. Lollytogs Ltd.*,
71 F.3d 996 (2d Cir. 1995)....9

*Kwan v. Schlein*,
634 F.3d 224 (2d Cir. 2011)....18

*May v. Sony Music Entm't*,
399 F. Supp. 3d 169 (S.D.N.Y. 2019)....15, 17

*Minder Music, Ltd. v. Mellow Smoke Music Co.*,
No. 98-cv-4496, 1999 WL 820575 (S.D.N.Y. Oct. 13, 1999)....18

*Neu Prods. Inc. v. Outside Interactive, Inc.*,
No. 23-cv-4125, 2024 WL 2992351 (S.D.N.Y. June 13, 2024) ............................................18

*New Old Music Grp., Inc. v. Gottwald*,
122 F. Supp. 3d 78 (S.D.N.Y. 2015)............................................................................15

*Peabody & Co. LLC v. Wayne*,
No. 22-cv-10316, 2024 WL 552495 (S.D.N.Y. Feb. 12, 2024) ..................................6, 10, 14

*Perry v. Mary Ann Liebert, Inc.*,
No. 17-cv-5600, 2018 WL 2561029 (S.D.N.Y. June 4, 2018) ............................................6, 8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)...................................................................................6, 9

*Pickett v. Migos Touring, Inc.*,
420 F. Supp. 3d 197 (S.D.N.Y. 2019).............................................................................3

*Psihoyos v. John Wiley & Sons, Inc.*,
748 F.3d 120 (2d Cir. 2014).......................................................................................16

*Pyatt v. Raymond*,
No. 10-cv-8764, 2011 WL 2078531 (S.D.N.Y. May 19, 2011) ..................................6, 10, 11

*Ringgold v. Black Entm't Tv, Inc.*,
126 F.3d 70 (2d Cir. 1997).........................................................................................11

*Robbins Music Corp. v. Weinstock*,
107 F. Supp. 102 (S.D.N.Y. 1952)...........................................................................7, 16

*Sandoval v. New Line Cinema Corp.*,
147 F.3d 215 (2d Cir. 1998)...................................................................................13, 14

*Smith v. New Line Cinema*,
No. 03-cv-5274, 2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004) ......................................18, 19

*Straughter v. Raymond*,
No. 08-cv-2170, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) ..............................................7

*TufAmerica, Inc. v. Diamond*,
968 F. Supp. 2d 588 (S.D.N.Y. 2013).............................................................13, 14, 17

*TufAmerica, Inc. v. WB Music Corp.*,
67 F. Supp. 3d 590 (S.D.N.Y. 2014)..........................................................................1, 9

*VMG Salsoul, LLC v. Ciccone*,
824 F.3d 871 (9th 2016).............................................................................................11

*Walker v. Time Life Films, Inc.*,
615 F. Supp. 430 (S.D.N.Y. 1985)....................13

*Warner Chappell Music, Inc. v. Nealy*,
144 S. Ct. 1135 (2024)....................17

*Williams v. Broadus*,
No. 99-cv-10957, 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001)....................8, 9, 11, 12

*Williams v. Midwest Airlines, Inc.*,
321 F. Supp. 2d 993 (E.D. Wis. 2004)....................7

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001)....................13

**Statutes**

17 U.S.C. §114....................3, 15

17 U.S.C. § 502....................19

17 U.S.C. § 507....................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................1, 5, 6

Fed. R. Evid. 201 ....................6, 7

1 Nimmer on Copyright § 2.05 ....................15

4 Nimmer on Copyright § 13.03 ....................9

Defendant Universal Music Publishing, Inc. ("Defendant") submits this memorandum of law in support of its motion to dismiss the Complaint (ECF Dkt. # 1) (the "Complaint") filed by TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) and to the extent that it seeks relief for any alleged infringement more than three years prior to the time when Plaintiff filed the Complaint.

**PRELIMINARY STATEMENT**

In 1992, recording artist Mary J. Blige released her debut album, *What's the 411*, which contained the track "Real Love." "Real Love" was a quick success, with the track reaching the Recording Industry Association of America's Gold certification by November 1992 and rising to #7 on the "Billboard Hot 100" near the end of 1992.

Now, more than 30 years after "Real Love" was released, Plaintiff appears out of the blue alleging that "Real Love" contains an uncleared sample from "Impeach the President," with no allegations concerning the works' substantial similarity. The absence of that allegation is fatal, as Plaintiff should know, having had an earlier complaint dismissed, with this Court issuing a condemnation on this very issue a decade ago in *TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590 (S.D.N.Y. 2014). As the Court explained there, Plaintiff's argument "assumes that every copying of any part of another artist's protected work is infringement. But as Judge Newman explained for the Second Circuit . . . factual copying and actionable copying are not coextensive concepts." *Id.* at 598. Unwilling to learn from the lessons of its past, Plaintiff again seeks to assert copyright liability without plausibly pleading substantial similarity with respect to the musical compositions at issue here. The copyright claim must accordingly be dismissed.

There is a reason Plaintiff avoids this essential allegation, moreover. When the works are compared, they are plainly not substantially similar as a matter of law. Indeed, "Impeach the President" and "Real Love" sound nothing alike. Although the Complaint is silent as to what

part of "Impeach the President" was allegedly sampled, in a subsequent submission to the Court, Plaintiff has clarified that it is alleging that Defendant sampled the drumbeat in "Impeach the President." *See* ECF Dkt. # 20 at 2. But the kick and snare drum rhythms in the compositions of "Impeach the President" and "Real Love" are different such that a lay listener would be unable to discern any part of "Impeach the President" in "Real Love."

With no allegations concerning substantial similarities in the compositions of the works, Plaintiff seeks to fill the gap by implying that Defendant is liable based on allegations that non-party UMG Recordings, Inc. ("UMG") entered into a settlement with Plaintiff concerning the "Impeach the President" and "Real Love" *sound recordings*, which represents a different copyright altogether. Of course, there are a variety of reasons why parties enter into agreements that do not relate to liability. And because there are two separate copyrights in music—one in the sound recording and one in the composition—there is no basis for asserting that infringing one is tantamount to infringing the other, as the caselaw uniformly establishes.

Finally, even if Plaintiff's claims were cognizable, which they are not, Plaintiff brought the Complaint more than three years after its claim accrued. Under the controlling law of this Circuit, Plaintiff is limited to, at most, financial relief going back only three years prior to when Plaintiff filed suit.

Because Plaintiff has failed to assert plausible claims, its Complaint must be dismissed with prejudice, and because its claim is untimely, its monetary remedy should in any case be limited to three years of retrospective relief.

## FACTS[1]

Recording artist Mary J. Blige, dubbed the "Queen of Hip-Hop Soul," released her debut album, *What's the 411*, in 1992, which contained the track "Real Love." Declaration of Joelle A. Milov in Support of Defendant's Motion to Dismiss, Exs. C-D. Ms. Blige's inaugural album was a near-instant success: *What's the 411* received the Recording Industry Association of America's ("RIAA") Gold certification in September 1992 before receiving Platinum, Double Platinum, and Triple Platinum statuses in October 1992, February 1993, and January 2000, respectively. Milov Dec., Ex. F. "Real Love," as well, was released as a single to equal acclaim, achieving an RIAA Gold certification in November 1992, and rising to #7 on *Billboard Magazine*'s "Billboard Hot 100" on December 5, 1992. *Id.*, Exs. G-H. *Rolling Stone*, in an article published this year, ranked "Real Love" as #328 of "The 500 Greatest Songs of All Time." *Id.*, Ex. I. Ms. Blige has released 13 multiplatinum albums, won 9 Grammy Awards, and has been nominated for such awards a total of 37 times. *Id.*, Exs. C-D. Defendant is one of several publishers of the composition "Real Love." Compl. ¶ 10.

Plaintiff alleges that "the 'Real Love' sound recording and the 'Real Love' musical composition contain an uncleared sample from 'Impeach the President.'" *Id.* ¶¶ 7, 11.[2] While Plaintiff uses the term "sample," often associated with incorporation of a portion of a sound recording in another recording, Plaintiff limits its claim here to an alleged "sample" or borrowing

---

[1] The facts are drawn from those in the Complaint, those in documents incorporated by reference into the Complaint, or those from documents of which the Court is permitted to take judicial notice. *See* Section I *infra*.

[2] There exist two separate copyrights in music—one related to the composition of a work and the other to the sound recording. *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019). A copyright in a musical composition protects what is referred to as lyrics and music, which can be captured by sheet music, whereas the copyright in a sound recording protects the actual sounds embodied in a particular recording of a composition. *See id.*; 17 U.S.C. §114(b).

of the musical composition. *See* Compl. ¶ 18. The figure below represents a transcription of the drums in the first 2 bars of "Impeach the President" and the Introduction and Bridge of "Real Love." [3]

**Impeach the President / Top Billin' (Intro) / Real Love (Intro)**

**Drums**




**Impeach the President / Top Billin' (0:11) / Real Love (Bridge)**

**Drums**




Declaration of Lawrence Ferrara, Ph.D ("Ferrara Dec") ¶ 2.

---

[3] The composition of "Real Love" contains a cleared sample from a separate song, "Top Billin,'" as referenced in the copyright registration for "Real Love." *See* Milov Dec, Ex. E. Plaintiff alleges that the sampled portion of "Top Billin'" originally came from "Impeach the President" and on that basis alleges that "Real Love" uses a sample of "Impeach the President." Accordingly, the tripartite transcriptions above contain transcriptions for all three compositions at issue: "Impeach the President," "Top Billin'", and "Real Love."

Plaintiff claims that "[it] has advised Defendant repeatedly of the presence of the uncleared sample from 'Impeach the President' in 'Real Love,' and Defendant has repeatedly refused to engage Plaintiff in substantive negotiations to rectify the [presence of the alleged uncleared sample of "Impeach the President" in "Real Love"], let alone agreed to compensate Plaintiff for the past infringement or on an ongoing basis." Compl. ¶ 12. Further, Plaintiff alleges that "Defendant's refusal to cooperate with Plaintiff is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG Recordings, Inc. [the "UMG Agreement"] with respect to the presence of the uncleared sample from 'Impeach the President' on the master sound recording of 'Real Love.'" *Id.* ¶ 13.

On the basis of the foregoing facts, Plaintiff filed a complaint on April 4, 2024, asserting claims for copyright infringement (Count I); a declaration that it owns the rights to the composition to "Impeach the President" and that Defendant's exploitation of a sample of "Impeach the President" constitutes infringement (Count II); and requesting an injunction restraining Defendant from infringing the composition of "Impeach the President." Compl. ¶¶ 14-47.

**ARGUMENT**

## I. THE MOTION TO DISMISS STANDARD

"To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Hines v. Roc-A-Fella Records, LLC*, No. 19-CV-4587, 2020 WL 1888832, at *2 (S.D.N.Y. Apr. 16, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*,

556 U.S. 622, 678 (2009)). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Perry v. Mary Ann Liebert, Inc.*, No. 17-cv-5600, 2018 WL 2561029, *2 (S.D.N.Y. June 4, 2018) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 765 Fed. Appx. 470 (2d Cir. 2019).

On a motion to dismiss, a court may consider documents incorporated by reference into the complaint or those documents that are "integral" to the complaint. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citation and internal quotation marks omitted). Relatedly, on a motion to dismiss a copyright infringement complaint, "'the works themselves supersede and control contrary descriptions of them.' 'Courts in this district regularly apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion to dismiss.'" *See Peabody & Co. LLC v. Wayne*, No. 22-cv-10316, 2024 WL 552495, at *2 (S.D.N.Y. Feb. 12, 2024) (citation omitted). Accordingly, at the pleading stage, a court may make a determination that plaintiff's and defendant's works are not substantially similar because, among other reasons, "no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also Pyatt v. Raymond*, No. 10-cv-8764, 2011 WL 2078531, at *5 (S.D.N.Y. May 19, 2011) ("In this Circuit, it is permissible for a district court to make a determination as to substantial similarity on a Rule 12(b)(6) motion to dismiss.").

Pursuant to Fed. R. Evid. 201, at any point in the proceeding, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c)(1), (d). And when a party makes the request, "[t]he court . . . must take judicial notice if . . . the court is supplied with the necessary information." Fed. R. Evid. 201(c). Courts may take judicial notice of copyright registrations, *Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005), as well as "'facts that various newspapers, magazines, and books were published solely as an indication of information in the public realm at the time, not whether the contents of those articles were, in fact, true.'" *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012) (citation omitted). As related to facts concerning music, courts have taken judicial notice of information concerning plaintiff band members, *Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 994 n.2 (E.D. Wis. 2004); "that [a song] has been and is a well-known and popular piece," *Robbins Music Corp. v. Weinstock*, 107 F. Supp. 102, 104 (S.D.N.Y. 1952); and information concerning an album's ranking on Billboard's official website. *Straughter v. Raymond*, No. 08-cv-2170, 2011 WL 3651350, at *12 (C.D. Cal. Aug. 19, 2011) (taking judicial notice of album ranking on Billboard's official website).

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER OF LAW

### (a) Plaintiff Fails to Plead that the Works are Substantially Similar.

The Complaint must be dismissed for Plaintiff's failure to plead substantial similarity between "Real Love" and protectable aspects of "Impeach the President."

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*

*Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). To satisfy the second element of the claim, a plaintiff must allege "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hines*, 2020 WL 1888832, at *3-4 (citation and internal quotation marks omitted).

To sufficiently allege substantial similarity, the Plaintiff "must specify which aspects of the [offending work] allegedly infringed Plaintiff's [work]." *Id.* (citation and internal quotation marks omitted); *see also Perry*, 2018 WL 2561029, at *5 (citation and internal quotation marks omitted) (failure to allege which portions of defendant's work infringed plaintiff's work "fatal" because "plaintiff must 'demonstrate how defendant[] infringed on h[er] copyright.'"). This rule applies equally to claims of alleged music sampling; a plaintiff must allege substantial similarity of the sampled material as an element of its copyright infringement claim. *See, e.g.*, *Williams v. Broadus*, No. 99-cv-10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (internal citations and quotation marks omitted) ("Unlawful appropriation is established 'by showing that the second work bears substantial similarity to protected expression in the earlier work. That this case involves the practice of sampling prior music into a new composition does not alter this analysis.").

For purposes of this motion only, Defendant assumes that Plaintiff owns a valid copyright. However, Plaintiff's claim is insufficient as a matter of law, because it has not pleaded substantial similarity. Indeed, the Complaint does not use the terms "substantial similarity" at all, let alone provide facts that indicate which aspects of "Real Love" are substantially similar to protectable portions of "Impeach the President." *Hines*, 2020 WL 1888832, at *3-4. Instead, Plaintiff assumes that sampling of a sound recording *per se*

constitutes infringement of the underlying composition, regardless of whether the work incorporating the sample is substantially similar to Plaintiff's work in any way. *See* Compl. ¶¶ 11-12; Letter to Court, ECF Doc. No. 20 at 2; *WB Music Corp.*, 67 F. Supp. 3d at 598 (dismissing complaint alleging that defendant's sampling of single word "oh" amounted to infringement, and finding "[P]laintiff's argument necessarily – and incorrectly – assumes that every copying of any part of another artist's protected work is infringement."). However, as a matter of law, Plaintiff must allege substantial similarity even in sampling cases. *See Broadus*, 2001 984714, at *3; 4 Nimmer on Copyright § 13.03 (noting that for sampling, "the inquiry should remain whether the sampled portions are substantially similar to plaintiff's work. If so—but only if so—then liability should result."). Because Plaintiff has not sufficiently pleaded substantial similarity, the Complaint must be dismissed. *See Peter F. Gaito*, 602 F.3d (affirming district court's grant of motion to dismiss on basis of failure to allege substantial similarity).

(b) "Real Love" is Not Substantially Similar to the Protectable Portions of "Impeach the President".

i. *An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach the President" in "Real Love".*

"In most cases, the test for substantial similarity is the so-called ordinary observer test . . . : whether an average lay observer would [] recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (citation and internal quotation marks omitted). In making its comparison of the works at issue, a court is "principally guided by comparing the contested [work]'s total concept and feel with that of the allegedly infringing work, as instructed by [its] good eyes and common sense." *Peter F. Gaito*, 602 F.3d at 66.

Under the ordinary observer test, a court considers "'whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Gottwald v. Jones*, No. 11-cv-1432, 2011 WL 103414, at *3 (S.D.N.Y. Sep. 12, 2011) (citation omitted). "In the context of music plagiarism, the Second Circuit has described this ordinary observer test as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'" *Pyatt*, 2011 WL 2078531, at *4 (quoting *Repp & K&R Music, Inc. v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).

With this motion, Defendant has submitted to the Court copies of "Impeach the President" and "Real Love." *See Peabody*, 2024 WL 552495, at *2; Milov Dec, Exs. A-B. As will be clear from a comparison of the songs and transcriptions, the works sound so different from one another that a listener of "Real Love" would not recognize any perceptible similarities to "Impeach the President," with respect to the drum rhythms or any other musical element. This case founders entirely upon simply listening to these two songs, which bear no similarity to one another. *See Francescatti v. Germanotta*, No. 11-cv-5270, 2014 WL 2767231, at *14-15 (N.D. Ill. June 17, 2014) (internal citation omitted) ("To determine whether the alleged infringing work has captured the total concept and feel of the copyrighted work under the ordinary observer test, courts make 'side-by-side . . . comparisons of works to determine similarity.' Where the works are musical, a court compares them by listening to the music and reviewing the transcriptions of the music to determine whether a reasonable juror could hear the similarities between the songs.").

Due to the differences between the works, the Court should dismiss Plaintiff's complaint. *See Gottwald*, 2011 WL 4344038, at *5 ("The music of the two works is not at all similar." ; "Since no 'average lay observer would recognize ['Tik Tok'] as having been appropriated from ['My Slushy'],' the My Slushy Parties' counterclaim must be dismissed."); *Pyatt*, 2011 WL 2078531, at *7 (on motion to dismiss, finding total concept and feel of songs to differ, such that "average observer would not recognize Usher's lyrics as having been appropriated from Pyatt's 'Court Up'", when "[a] comparison of the two songs illustrates that there are no identical lyrics[, and] [t]he two songs also do not share a common theme."); *see also VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 874 (9th 2016) ("agree[ing] with the district court that, as a matter of law, a general audience would not recognize the brief snippet in Vogue as originating from Love Break").

ii. *The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the Works are Not Substantially Similar Because Any Use of Plaintiff's Work is Qualitatively and Quantitatively De Minimis*

Courts sometimes apply a different test for substantial similarity when a defendant sampled plaintiff's work. In these cases, instead of applying the ordinary observer test, the court has applied a "fragmented literal similarity" analysis. Fragmented literal similarity "refers to exact copying of a portion of a work." *Ringgold v. Black Entm't Tv, Inc.*, 126 F.3d 70, 75 n. 3 (2d Cir. 1997) (citing Nimmer, § 1303[A][2]). Thus, courts have applied the fragmented literal similarity test when "parts of the pre-existing work are copied, [for example] note for note, in the new work." *See, e.g.*, *Broadus*, 2001 WL 984714, at *3; *see also Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998) (in non-sampling case noting that the "'fragmented literal similarity' test . . . focuses upon copying of direct quotations or close paraphrasing").

Here, it is not even possible to apply the fragmented literal similarity test because "Real Love" does not copy "Impeach the President" "note for note" or by "direct quotation[] or close paraphrasing" of any musical elements. *Broadus*, 2001 WL 984714, at *3; *Castle Rock*, 150 F.3d at 140. As seen in the transcriptions below, the kick drum and snare drum rhythms in the compositions of "Impeach the President" and "Real Love" are different, and the hi-hat rhythm in "Real Love" is different from that in "Impeach the President."[4] *See* Ferrara Dec. ¶¶ 2-4.:

**Impeach the President / Top Billin' (Intro) / Real Love (Intro)**

**Drums**




**Impeach the President / Top Billin' (0:11) / Real Love (Bridge)**

**Drums**




[4] By contrast, the transcriptions for "Real Love" and "Top Billin" are similar. Presumably, it was that similarity, despite the lack of similarity between "Real Love" and "Impeach The President," that is the source of Plaintiff's misapprehensions.

*See Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985) ("In determining copyright infringement, the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings."). As such, the fragmented literal similarity test should not be applied and instead the Court should apply "[t]he standard test for substantial similarity," the ordinary observer test, which as discussed above, would find the works not substantially similar as a matter of law. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001).

However, even if the Court applied the fragmented literal similarity test, it should nonetheless find the works not substantially similar and dismiss the Complaint. At the motion to dismiss phase, in assessing fragmented literal similarity, a court "considers whether the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionably copying) has occurred." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 598 (S.D.N.Y. 2013). Here, the works are both quantitatively and qualitatively so different that they cannot support plaintiff's infringement claim.

Plaintiff has failed to set forth the quantity of what Defendant has copied in the composition "Real Love," such that its claim is not cognizable. "To establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (quoting *Ringgold*, 126 F.3d at 74). "'In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied . . . ." *TufAmerica, Inc.*, 968 F.

Supp. 2d at 598-99 (quoting *Sandoval*, 147 F.3d at 217). Here, Plaintiff has failed to allege *any* quantity of protectable portions in the relevant two measures of the "Impeach the President" composition that has been inserted into the composition of "Real Love," let alone an amount that rises above the *de minimis* level. *Cf. Sandoval*, 147 F.3d at 218 ("Because Sandoval's photographs appear fleetingly and are obscured, severely out of focus, and virtually unidentifiable, we find the use of those photographs to be *de minimis*."). Accordingly, the Court should find the works not substantially similar. *See Peabody*, 2024 WL 552495, at *4 ("Under the fragmented literal similarity test, Plaintiff has failed to demonstrate that Defendants copied any protectable portion of the Musical Composition" and granting motion to dismiss with prejudice").

Plaintiff similarly has made no allegation as to the qualitative importance of the portion of the composition of "Impeach the President" that is at issue in this dispute. Accordingly, without any such allegations and combined with the absence of any allegation concerning the quantity of appropriation, the Court should find the works not substantially similar. *See TufAmerica*, 968 F. Supp. 2d at 605, 605-06 (internal citation omitted) ("The sequence is in no way 'the heart of the composition,' or in any other way qualitatively important or unique, and it is so insignificant quantitatively that together these factors preclude any finding of actionable infringement based on the use of this sample.").

*i. The UMG Agreement is Irrelevant to Plaintiff's Claims.*

With no plausible allegations concerning substantial similarities between the compositions of "Impeach the President" and "Real Love," Plaintiff instead insinuates that Defendant infringes simply because non-party UMG settled Plaintiff's claim of infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach the President."

*See* Compl. ¶¶ 11-13. According to Plaintiff, Defendant's failure to compensate it for the alleged usage of an uncleared sample of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement UMG [] with respect to the presence of the uncleared sample from 'Impeach the President' on the master sound recording of 'Real Love.'" Compl. ¶¶ 12-13. Plaintiff is confusing the copyright in a sound recording with the copyright in a musical composition. They are different species of copyrights and protect different types of expression.

For multiple reasons, the UMG Agreement concerning the "Impeach the President" sound recording provides no basis for Plaintiff's claim that Defendant is infringing Plaintiff's copyright in the composition of "Impeach the President." First, a party may enter into a settlement agreement for a variety of reasons that do not relate to an admission or finding of liability. Indeed, the UMG Agreement disclaims any admission of liability or wrongdoing on the part of UMG. Milov Dec., Ex. J. Second, because there exist two separate copyrights in music—one related to the composition of a work and the other to the sound recording (*see supra* n.2)—a work can readily infringe one without infringing the other.[5] As noted above, the copyright in a sound recording protects the actual sounds embodied in a recording, *see* 17 U.S.C. §114(b), where as a copyright in a musical composition protects the melody, harmony, rhythm and other musical elements of a musical composition. *See* 1 Nimmer on Copyright § 2.05[B].

---

[5] Plaintiff's argument that infringement of a copyright in a composition ineluctably follows from infringement of a sound recording is incorrect as a matter of law and was not held otherwise by the court in *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78 (S.D.N.Y. 2015), as stated by Plaintiff in the parties' joint letter to the Court. ECF Doc. No. 20 at 2-3 (arguing, "First, it is beyond question that when one infringes by sample, he or she infringes both the sound recording and the underlying musical composition," citing as support *New Old Music Grp.*). If a party infringes a sound recording by sampling, it *may* infringe the underlying work, depending on the facts of the case, but, to Defendant's knowledge, there is no case holding that an infringement of a sound recording *per se* results in the infringement of a composition.

Thus, in *Newton v. Diamond*, the defendant musical group The Beastie Boys licensed "a six-second, three-note segment" of one of Plaintiff's *sound* *recordings*, but did not obtain a license for the underlying composition, and plaintiff brought suit. 349 F.3d 591 (9th Cir. 2003). The district court granted summary judgment to the defendants, because the note sequence was unprotectable, and the Ninth Circuit affirmed on the ground that, even assuming the sequence were protectable, the use of the three-note segment was *de minimis* and insufficient to establish liability under the Copyright Act. *Id.* Accordingly, any reference to the UMG Agreement is irrelevant and does not bear on the question of Defendant's alleged infringement of the relevant musical composition.

## III. THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY.

Under § 507(b) of the Copyright Act, a copyright claimant cannot bring suit for relief "unless [the action] is commenced within three years after the claim accrued." 17 U.S.C. § 507. A copyright infringement claim accrues when "the copyright holder discovers, or with due diligence should have discovered, the infringement . . . ." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).

Plaintiff assuredly should have known of its claim long prior to when it filed its Complaint in April 2024. The Court may take judicial notice of the fact that "Real Love" has long been considered a success. *See, e.g.*, *Robbins Music*, 107 F. Supp. at 104; Milov Dec. Exs. G-I. Such popularity and widespread dissemination of "Real Love", dating back *more than thirty years*, should have put any reasonable copyright owner on constructive notice of its claim long ago. *See Luar Music Corp. v. Universal Music Grp.*, Inc., 847 F. Supp. 2d 299, 310 (D.P.R. 2012) (reasonable party would have discovered claim due to fact "the album Reggaeton Latino, which the Copyrighted Work appears on, has sold over 500,000 units and digital downloads and

The Last Don and the Last Done Live have sold millions of units and digital downloads and were certified multi-platinum.”).

Moreover, Plaintiff's allegations betray that it actually knew about its claim more than three years prior to when it brought suit. The UMG Agreement, incorporated by reference into Plaintiff's complaint, states that Plaintiff contacted UMG about the dispute on March 9, 2021, which is more than three years prior to when the Complaint was filed. *See Chambers*, 282 F.3d at 152-53; Milov Dec, Ex. J; Complaint. And because Plaintiff has not, and could not, argue that it was unaware of "Real Love" until recently, there is no argument that the discovery rule applies. *See generally Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135, 1137 (2024) (assuming without deciding, that claim was timely if brought within three years of discovery).

Because Plaintiff's claim was not brought within three years of accrual and the injury rule applies, should Plaintiff be entitled to any recovery in this action, which is should not be due to the dissimilarity of the works, it must be limited to three years of damages prior to filing the Complaint. *See, e.g.*, *May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 192 (S.D.N.Y. 2019) (granting motion to dismiss in terms of limiting damages to three years prior to filing suit), *adopted in pertinent part*, 399 F. Supp. 3d 169 (S.D.N.Y. 2019); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d at 609 (applying injury rule and limiting claims to three years prior to filing suit).[6] Plaintiff cannot reasonably dispute such a limitation when on March 9, 2021 it contacted

[6] Although Plaintiff's Complaint is not entirely clear, to the extent its claim sounds in an ownership claim, it would be barred in full by the statute of limitations. *Compare* Compl. ¶¶ 25-28 (requesting declaration that Plaintiff owns rights in "Impeach the President" and Defendant's alleged sample of its work in "Real Love" infringes its right to, *inter alia*, create derivative works) *and Greene v. Warner Music Grp.*, No. 23-cv-1555, ECF Dkt. # 58 ¶¶ 92-101 (second claim alleging that plaintiff is owner of composition and that defendants infringed plaintiff's right to, *inter alia*, create derivative work) *with Greene*, 2024 WL 3045966, at *13 (S.D.N.Y. June 18, 2024) (interpreting second claim—for declaration of ownership of plaintiff's work and that defendant's work was unauthorized derivative work—to "ostensibly represent[] Plaintiff's

UMG, seeking certain information about royalties earned from the exploitation of "Real Love" for the prior three years. Milov Dec., Ex. J.

## IV. PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF ACTION, AND MUST BE DISMISSEED

Plaintiff's second and third causes of action do not state claims and therefore must be dismissed. Plaintiff's second cause of action seeks a declaration "that [Plaintiff] is the owner of all rights in and to the musical composition 'Impeach the President,' and a declaration that Defendant's ongoing exploitation of the musical composition 'Impeach the President,' through the incorporation of an uncleared sample of the musical composition 'Impeach the President' in the musical composition 'Real Love' constitutes copyright infringement." Compl. ¶ 37. "The Declaratory Judgment Act does not create an independent cause of action. Rather, '[i]ts operation is procedural only–to provide a form of relief previously unavailable." *Johnson v. Magnolia Pictures LLC*, No. 18-cv-9337, 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (citation omitted). Because Plaintiff seeks nothing in this claim that would not be covered by its infringement cause of action, the claim must be dismissed as duplicative. *Smith v. New Line Cinema*, No. 03-cv-5274, 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004) (dismissing claim for a declaration of infringement as duplicative of infringement claim); *see also Neu Prods. Inc. v. Outside Interactive, Inc.*, No. 23-cv-4125, 2024 WL 2992351, at *3 (S.D.N.Y. June 13, 2024)

---

attempt to assert an interest in [defendant's work]"). An ownership claim, even where disguised as an infringement claim, accrues only once. *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011); *Minder Music, Ltd. v. Mellow Smoke Music Co.,* No. 98-cv-4496, 1999 WL 820575, at *1-2 (S.D.N.Y. Oct. 13, 1999) (regardless of whether a plaintiff styles its claim as one for infringement, if ownership is at issue, then the statute of limitations will bar the copyright ownership claim). For the reasons described above, Plaintiff's claim accrued long ago, and any ownership claim is time barred. *See, e.g.*, *Charles v. Seinfeld*, 410 F. Supp. 3d 656 (S.D.N.Y. 2019), *aff'd,* 803 Fed. Appx. 550 (2d Cir. 2020).

(finding that claim for declaratory judgment that plaintiff owned copyright failed to allege claim under Copyright Act).

Plaintiff's third claim for injunctive relief is similarly misguided. In that claim, Plaintiff seeks "preliminary and permanent injunctive relief enjoining and restraining Defendant, and anyone acting at its direction or under its control, from infringing Plaintiff's copyright in the musical composition 'Impeach the President,' pursuant to 17 U.S.C. § 502 and common law principles of contract law." Compl. ¶ 47. "Like a declaratory judgment, 'an injunction is a remedy, not a separate cause of action.'" *Johnson*, 2019 WL 4412483, at *4 n. 4. Accordingly, Plaintiff's third cause of action for injunctive relief must be dismissed. *See Smith*, 2004 WL 2049232, at *5.

**CONCLUSION**

For the aforementioned reasons, the Court should grant Defendant's motion to dismiss Plaintiff's Complaint with prejudice. Alternatively, the Court should find that Plaintiff is unable to recover for any alleged infringement prior to April 4, 2021.

Dated: September 23, 2024

COWAN, LIEBOWITZ & LATMAN, P.C.

Richard S. Mandel (rsm@cll.com)
Joelle A. Milov (jam@cll.com)
114 West 47th Street
New York, NY 10036-1525
212.790.9200 (Telephone)
212.575.0671 (Facsimile)

*Attorneys for Defendant Universal Music Publishing, Inc.*



29988/008/4707969