**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

TUFAMERICA, INC. d/b/a TUFF CITY
RECORDS,                                                   :

                        Plaintiff,                         :    Case No. 1:24-cv-2585-DEH

              v.                                       :    **ORAL ARGUMENT REQUESTED**

SONGS OF UNIVERSAL, INC.,                                  :

                  Defendant.                         :

----------------------------------------------------------------x

<br>

## <u>DEFENDANT'S MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTS ........................................................................................................................... 3

ARGUMENT .................................................................................................................. 6

I.     THE MOTION TO DISMISS STANDARD ...................................................... 6

II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT
       SUFFICIENTLY ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR
       AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER
       OF LAW ............................................................................................................. 8

       A. Plaintiff Has Failed to Plead that any Appropriated Elements are Original ............... 10

       B. An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach
          the President" in "Real Love". ..................................................................... 11

       C. The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the
          Works are Not Substantially Similar Because Any Use of Plaintiff's Work is
          Quantitatively and Qualitatively De Minimis ............................................... 13

       D. The UMG Agreement is Irrelevant to Plaintiff's Claims ............................. 16

III.   THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY ......... 17

IV.    PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF
       ACTION, AND MUST BE DISMISSED ........................................................ 20

V.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH NO FURTHER
       LEAVE TO AMEND ........................................................................................ 21

CONCLUSION ............................................................................................................ 22

29988/008/4746568

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canas v. Whitaker,*
  No. 19-cv-06031, 2019 WL 2287789 (W.D.N.Y. May 29, 2019)..........................................22

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.,*
  150 F.3d 132 (2d Cir. 1998).................................................................................13

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002).............................................................................6, 18

*Charles v. Seinfeld,*
  410 F. Supp. 3d 656 (S.D.N.Y. 2019)...................................................................20

*Clanton v. UMG Recordings, Inc.,*
  556 F. Supp. 3d 322 (S.D.N.Y. 2021)..................................................................10

*Effie Film, LLC v. Pomerance,*
  909 F. Supp. 2d 273 (S.D.N.Y. 2012).....................................................................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991).................................................................................................8

*Francescatti v. Germanotta,*
  No. 11-cv-5270, 2014 WL 2767231 (N.D. Ill. June 17, 2014)...............................12

*Greene v. Warner Music Grp.,*
  No. 23-cv-1555, 2024 WL 3045966 (S.D.N.Y. June 18, 2024) .............................19

*Gottwald v. Jones,*
  No. 11-cv-1432, 2011 WL 4344038 (S.D.N.Y. Sep. 12, 2011) .................10, 11, 12

*Hines v. BMG Rights Mgmt. (US) LLC,*
  694 F. Supp. 3d 341 (S.D.N.Y. 2023)..................................................................11

*Hines v. Roc-A-Fella Records, LLC,*
  No. 19-CV-4587, 2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020) ....................6, 8, 9

*Howard v. Records,*
  615 F. Supp. 3d 190 (W.D.N.Y. 2022)..................................................................19

*Island Software & Comput. Serv. v. Microsoft Corp.,*
  413 F.3d 257 (2d Cir. 2005)....................................................................................7

29988/008/4746568

*Johnson v. Magnolia Pictures LLC*,
    No. 18-cv-9337, 2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019) ......................................20, 21

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995)..................................................................................................11

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011)................................................................................................18

*Luar Music Corp. v. Universal Music Grp.*,
    847 F. Supp. 2d 299, 310 (D.P.R. 2012)............................................................................18

*Matthews v. City of N.Y.*,
    No. 23-cv-3959, 2024 WL 4135483 (S.D.N.Y. Sep. 10, 2024) .......................................21, 22

*May v. Sony Music Entm't*,
    399 F. Supp. 3d 169 (S.D.N.Y. 2019)................................................................................20

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015)..........................................................................10, 11

*Minder Music, Ltd. v. Mellow Smoke Music Co.*,
    No. 98-cv-4496, 1999 WL 820575 (S.D.N.Y. Oct. 13, 1999)................................................18

*N. Music Corp. v. King Record Distrib. Co.*,
    105 F. Supp. 393 (S.D.N.Y. 1952)......................................................................................11

*Neu Prods. Inc. v. Outside Interactive, Inc.*,
    No. 23-cv-4125, 2024 WL 2992351 (S.D.N.Y. June 13, 2024) ...........................................21

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ......................................................................................15, 17

*Peabody & Co. LLC v. Wayne*,
    No. 22-cv-10316, 2024 WL 552495 (S.D.N.Y. Feb. 12, 2024) .........................................7, 12

*Perry v. Mary Ann Liebert, Inc.*,
    No. 17-cv-5600, 2018 WL 2561029 (S.D.N.Y. June 4, 2018) .............................................6, 8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)............................................................................................7, 9, 11

*Pickett v. Migos Touring, Inc.*,
    420 F. Supp. 3d 197 (S.D.N.Y. 2019).................................................................................4

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)...............................................................................................18

iii

*Pyatt v. Raymond*,
No. 10-cv-8764, 2011 WL 2078531 (S.D.N.Y. May 19, 2011) ...........................................7, 12

*Ringgold v. Black Entm't Tv, Inc.*,
126 F.3d 70 (2d Cir. 1997) ...................................................................................................13

*Robbins Music Corp. v. Weinstock*,
107 F. Supp. 102 (S.D.N.Y. 1952) ....................................................................................8, 18

*Rose v. Hewson*,
No. 17-cv-1471, 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) .................................................10

*Sandoval v. New Line Cinema Corp.*,
147 F.3d 215 (2d Cir. 1998) .............................................................................................14, 15

*Smith v. New Line Cinema*,
No. 03-cv-5274, 2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004) ...........................................21

*Straughter v. Raymond*,
No. 08-cv-2170, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) ..............................................8

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ...............................................................................................21

*TufAmerica, Inc. v. Diamond*,
968 F. Supp. 2d 588 (S.D.N.Y. 2013) ...............................................................14, 15, 16, 20

*TufAmerica, Inc. v. WB Music Corp.*,
67 F. Supp. 3d 590 (S.D.N.Y. 2014) .............................................................................1, 9, 15

*Vasquez v. Reece Sch.*,
No. 1:22-cv-5986, 2024 WL 497433 (S.D.N.Y. Feb. 8, 2024) .............................................22

*VMG Salsoul, LLC v. Ciccone*,
824 F.3d 871 (9th Cir. 2016) ...............................................................................................13

*Walker v. Time Life Films, Inc.*,
615 F. Supp. 430 (S.D.N.Y. 1985) .......................................................................................14

*Weber v. Geffen*,
63 F. Supp. 2d 458 (S.D.N.Y. 1999) .....................................................................................19

*Williams v. Broadus*,
No. 99-cv-10957, 2001 WL 984714 (S.D.N.Y. Aug. 27, 2001).....................................8, 13, 14

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001).................................................................................................14

iv

**Statutes**

17 U.S.C. §114(b) ..........................................................................................4, 17

17 U.S.C. § 507 ...................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 6

Fed. R. Evid. 201 .................................................................................................7

1 Nimmer on Copyright § 2.05[B].....................................................................17

4 Nimmer on Copyright § 13.03 ..........................................................................9

29988/008/4746568

Defendant Songs of Universal, Inc. ("Defendant") submits this memorandum of law in support of its motion to dismiss the Amended Complaint (ECF Dkt. # 36) (the "Am. Complaint") filed by TufAmerica, Inc. d/b/a Tuff City Records ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) and to the extent that it seeks relief for any alleged infringement more than three years prior to the time when Plaintiff filed the Complaint.

## PRELIMINARY STATEMENT

In 1992, recording artist Mary J. Blige released her debut album, *What's the 411*, which contained the track "Real Love." "Real Love" was a quick success, with the track reaching the Recording Industry Association of America's Gold certification by November 1992 and rising to #7 on the "Billboard Hot 100" near the end of 1992.

Now, more than 30 years after "Real Love" was released, Plaintiff appears out of the blue alleging that "Real Love" contains an uncleared "sample" of a few "drum sounds" from "Impeach the President." Plaintiff's original complaint (ECF Dkt. #1) contained no allegations at all concerning the works' substantial similarity. The absence of that allegation was fatal, as Plaintiff should have known, having had an earlier complaint dismissed on the same grounds a decade ago in *TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590 (S.D.N.Y. 2014). As the Court explained there, Plaintiff's argument "assumes that every copying of any part of another artist's protected work is infringement. But as Judge Newman explained for the Second Circuit . . . factual copying and actionable copying are not coextensive concepts." *Id*. at 598.

In response to the first motion to dismiss, Plaintiff amended its complaint to add allegations concerning the similarity between "Impeach the President" and "Real Love" in the form of annotations onto the musical transcriptions that affirmatively refute Plaintiff's claim of substantial similarity. As is apparent from simply reviewing Plaintiff's scrawled circles, it is trying to equate drum beats that are different on their face. In any event, Plaintiff makes no

allegation as to which original components of "Impeach the President" it claims Defendant appropriated, as is required.

Moreover, these differences in the transcriptions of the relevant drum beats of the parties' compositions make plain what the ears of an ordinary listener can readily perceive: "Impeach the President" and "Real Love" sound nothing like one another in any respect that any listener could hear. While Plaintiff claims that "Real Love" sampled a separate composition, "Top Billin'", which, in turn, sampled "Impeach the President," *if "Top Billin'" sampled "Impeach the President", the amount sampled of "Impeach the President" was less than 1 second of a nearly 4-minute song, which is less than .5% of that work, which is not actionable*. Not surprisingly then, when the works are compared, they are so plainly different that a lay listener would be unable to discern any part of "Impeach the President" in "Real Love."

With no plausible allegations concerning substantial similarities in the compositions of the works, Plaintiff seeks to fill the gap by implying that Defendant is liable based on allegations that non-party UMG Recordings, Inc. ("UMG") entered into a settlement with Plaintiff concerning the "Impeach the President" and "Real Love" *sound recordings*, which represents a different copyright altogether. Of course, there are a variety of reasons why parties enter into agreements that do not relate to liability. And because there are two separate copyrights in music—one in the sound recording and one in the composition—there is no basis for asserting that infringing one is tantamount to infringing the other, as the caselaw uniformly establishes.

Moreover, even after Plaintiff was put on notice by the first motion to dismiss that its claims were not timely and that its second and third claims failed to state causes of action, Plaintiff failed to address these deficiencies in the Amended Complaint and instead asserts the same improper claims. Even if Plaintiff's infringement claim was cognizable, which it is not,

Plaintiff brought the Complaint more than three years after its claim accrued. As Plaintiff's claim is essentially one for ownership of "Real Love," it is wholly time-barred by the statute of limitations for copyright ownership claims. Alternatively, Plaintiff is limited to, at most, financial relief going back only three years prior to the date this suit was commenced. Additionally, Plaintiff's second and third claims are remedies and not causes of action and must be dismissed.

Because Plaintiff has failed to assert plausible claims, its Amended Complaint must be dismissed with prejudice, and because its infringement claim is untimely, its monetary remedy should in any case be limited to three years of retrospective relief.

## FACTS[1]

Recording artist Mary J. Blige, dubbed the "Queen of Hip-Hop Soul," released her debut album, *What's the 411*, in 1992, which contained the track "Real Love." Declaration of Joelle A. Milov in Support of Defendant's Motion to Dismiss ("Milov Dec."), Exs. C-D. "Real Love" contained a cleared sample of Audio Two's song "Top Billin'".

Ms. Blige's inaugural album was a near-instant success and received the Recording Industry Association of America's ("RIAA") Gold certification in September 1992 followed by receiving Platinum, Double Platinum, and Triple Platinum status in October 1992, February 1993, and January 2000, respectively. Milov Dec., Ex. F. "Real Love" was also released as a single to equal acclaim, achieving an RIAA Gold certification in November 1992, and rising to #7 on *Billboard Magazine*'s "Billboard Hot 100" on December 5, 1992. *Id.*, Exs. G-H. *Rolling Stone*, in an article published this year, ranked "Real Love" as #328 of "The 500 Greatest Songs

---

[1] The facts are drawn from the Amended Complaint, documents incorporated by reference in the Amended Complaint, and facts included in documents of which the Court is permitted to take judicial notice. *See* Section I *infra*.

of All Time." *Id.*, Ex. I.  Ms. Blige has released 13 multiplatinum albums, won 9 Grammy Awards, and has been nominated for such awards a total of 37 times.  *Id.*, Exs. C-D.  Defendant is one of several publishers of the composition "Real Love" (but the only one which has been sued).  Am. Compl. ¶ 11.

   Plaintiff alleges that "[a]t the time of the release of 'Real Love,' both the sound recording and musical composition contained uncleared samples and interpolations from 'Impeach the President.'"  *Id.* ¶ 12.[2]  Specifically, Plaintiff alleges that "'Real Love' sampled drum sounds and copied the corresponding compositional elements from the opening of Audio Two's 'Top Billin','" which in turn sampled those same drum sounds and copied those same corresponding compositional elements from 'Impeach the President.'"  *Id.* ¶ 13.  As set forth below, the sampling of "drum sounds" from a sound recording is irrelevant to whether the copyright in a musical composition has been infringed.  Comparisons of the compositions of "Impeach the President" at 0:00, "Top Billin'" at 0:00 and 0:11, and "Real Love" at 0:03 and 1:44, respectively, are listed below.  The Amended Complaint alleges that "Real Love" sampled the drum sounds of "Top Billin'" but the composition was then modified by adding a hi-hat rhythm.  *Id.* ¶ 19.  Therefore, the "Real Love" hi-hat rhythm was neither sampled nor interpolated from "Top Billin'" or "Impeach the President".  *See id.* at ¶¶ 13-19.

---

[2] There exist two separate copyrights in music—one related to the composition of a work and the other to the sound recording.  *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019).  A copyright in a musical composition protects what is referred to as lyrics and music, which can be captured by sheet music, whereas the copyright in a sound recording protects the actual sounds embodied in a particular recording of a composition.  *See id.*; 17 U.S.C. §114(b).



Declaration of Lawrence Ferrara, Ph.D. ("Ferrara Dec.") ¶ 2. While Paragraph 3 of the Ferrara Declaration contains a full drum legend, using that legend, Defendant has annotated a few types of the notes on the above transcription. *See* Ferrara Dec. ¶ 3.

Plaintiff claims that "[it] has advised Defendant repeatedly of the presence of the uncleared samples and corresponding compositional elements from 'Impeach the President' in 'Real Love,' and Defendant has repeatedly refused to engage Plaintiff in substantive negotiations to rectify the foregoing, let alone agreed to compensate Plaintiff for the past infringement or on an ongoing basis." Am. Compl. ¶ 21. Further, Plaintiff alleges that "Defendant's refusal to cooperate with Plaintiff is difficult to reconcile with the fact that Plaintiff reached an agreement with UMG Recordings, Inc. [the "UMG Agreement"] with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'" *Id.* ¶ 22.

Plaintiff filed its initial complaint on April 4, 2024 against Universal Music Publishing, Inc. ("UMP"), asserting claims for copyright infringement (Count I); a declaration that it owns the rights to the composition to "Impeach the President" and that Defendant's exploitation of a sample of "Impeach the President" constitutes infringement (Count II); and requesting an injunction restraining Defendant from infringing the composition of "Impeach the President" (Count III).  Thereafter, UMP moved to dismiss the Complaint.  *See* ECF Dkt. #s 25-28.  In response, Plaintiff filed its Amended Complaint, which Defendant now moves to dismiss.

## ARGUMENT

## I. THE MOTION TO DISMISS STANDARD

"To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'"  *Hines v. Roc-A-Fella Records, LLC*, No. 19-CV-4587, 2020 WL 1888832, at *2 (S.D.N.Y. Apr. 16, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009)).  "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Perry v. Mary Ann Liebert, Inc.*, No. 17-cv-5600, 2018 WL 2561029, *2 (S.D.N.Y. June 4, 2018) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 765 Fed. Appx. 470 (2d Cir. 2019).

On a motion to dismiss, a court may consider documents incorporated by reference into the complaint or those documents that are "integral" to the complaint.  *See, e.g., Chambers v.*

*Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citation and internal quotation marks omitted).  Relatedly, on a motion to dismiss a copyright infringement complaint, "'the works themselves supersede and control contrary descriptions of them.' 'Courts in this district regularly apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion to dismiss.'"  *See Peabody & Co. LLC v. Wayne*, No. 22-cv-10316, 2024 WL 552495, at *2 (S.D.N.Y. Feb. 12, 2024) (citation omitted).  Accordingly, at the pleading stage, a court may make a determination that plaintiff's and defendant's works are not substantially similar because, among other reasons, "no reasonable jury, properly instructed, could find that the two works are substantially similar."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also Pyatt v. Raymond*, No. 10-cv-8764, 2011 WL 2078531, at *5 (S.D.N.Y. May 19, 2011). This case warrants dismissal on this basis.

Pursuant to Fed. R. Evid. 201, at any point in the proceeding, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (c)(1), (d).  And when a party makes the request, "[t]he court . . . must take judicial notice if . . . the court is supplied with the necessary information."  Fed. R. Evid. 201(c). Courts may take judicial notice of copyright registrations, *Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005), as well as "'facts that various newspapers, magazines, and books were published solely as an indication of information in the public realm at the time, not whether the contents of those articles were, in fact, true.'"  *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012) (citation omitted).  As related to facts concerning music, courts have taken judicial notice "that [a song] has been and is a well-known

and popular piece," *Robbins Music Corp. v. Weinstock*, 107 F. Supp. 102, 104 (S.D.N.Y. 1952); and information concerning an album's ranking on Billboard's official website. *Straughter v. Raymond*, No. 08-cv-2170, 2011 WL 3651350, at *12 (C.D. Cal. Aug. 19, 2011) (taking judicial notice of album ranking on Billboard's official website).

## II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT SUFFICIENTLY ALLEGE THAT THE WORKS ARE SUBSTANTIALLY SIMILAR AND THE WORKS ARE ALSO NOT SUBSTANTIALLY SIMILAR AS A MATTER OF LAW

Plaintiff's complaint fails because it does not properly allege substantial similarity and simply listening to the compositions at issue reveals *no perceptive similarity at all*.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). To satisfy the second element of the claim, a plaintiff must allege "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hines*, 2020 WL 1888832, at *3-4 (citation and internal quotation marks omitted).

To sufficiently allege substantial similarity, the Plaintiff "must specify which aspects of the [offending work] allegedly infringed Plaintiff's [work]." *Id.* (citation and internal quotation marks omitted); *see also Perry*, 2018 WL 2561029, at *5 (citation and internal quotation marks omitted) (failure to allege which portions of defendant's work infringed plaintiff's work "fatal" because "plaintiff must 'demonstrate how defendant[] infringed on h[er] copyright.'"). This rule applies equally to claims of alleged music sampling; a plaintiff must allege substantial similarity of the sampled material as an element of its copyright infringement claim. *See, e.g.*, *Williams v. Broadus*, No. 99-cv-10957, 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (internal citations

and quotation marks omitted) ("Unlawful appropriation is established 'by showing that the second work bears substantial similarity to protected expression in the earlier work.  That this case involves the practice of sampling prior music into a new composition does not alter this analysis."); 4 Nimmer on Copyright § 13.03 (noting that for sampling, "the inquiry should remain whether the sampled portions are substantially similar to plaintiff's work.  If so—but only if so—then liability should result.").  Because Plaintiff has not sufficiently pleaded substantial similarity, the Amended Complaint must be dismissed.  *See Peter F. Gaito*, 602 F.3d.

Plaintiff's original complaint failed even to use the terms "substantial similarity" at all, let alone provide facts that indicate which aspects of "Real Love" are substantially similar to protectable portions of "Impeach the President."  *See Hines*, 2020 WL 1888832, at *3-4. Instead, Plaintiff assumed that sampling of a sound recording *per se* constitutes infringement of the underlying composition, regardless of whether the work incorporating the sample is substantially similar to Plaintiff's work in any way.  *See* Compl. ¶¶ 11-12; Letter to Court, ECF Dkt. # 20 at 2; *WB Music Corp.*, 67 F. Supp. 3d at 598 (dismissing complaint alleging that defendant's sampling of single word "oh" amounted to infringement, and finding "[P]laintiff's argument necessarily – and incorrectly – assumes that every copying of any part of another artist's protected work is infringement.").

In response to UMP's motion to dismiss, Plaintiff attempted to cure this deficiency by providing a markup of musical transcriptions, without any corresponding narrative, allegedly showing the similarities between the two compositions.  But, in the first instance, these markups are inaccurate given that Plaintiff has drawn red boxes or circles around elements that are not similar in order to make the works appear more alike.  *See* Am. Compl. ¶ 20 (treating as similar open hi-hats in "Impeach the President" and closed hi-hats in "Real Love" when they are

9

different, treating two hi-hats as similar when the one in "Impeach the President" is combined

with a snare and the one in "Real Love" is combined with a kick drum, etc.); *see* Ferrara Dec.

¶ 3.  Moreover, Plaintiff's transcriptions do not state which of the allegedly similar elements are

original to Plaintiff or explain how the encircled bits create similarity given that they are broken

up by *other elements* throughout the series of those red circles.  Most importantly, the markup

fails to overcome the fact that no lay observer would be able to detect "Impeach the President" in

"Real Love."  As such, Plaintiff has failed to plead substantial similarity and the Amended

Complaint must be dismissed.

> A.    *Plaintiff Has Failed to Plead that any Appropriated Elements are Original*

Even had Plaintiff accurately described the minimal similarities between the parties'

works, the Amended Complaint fails to allege which, if any, of the shared compositional

elements are original.  *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 331

(S.D.N.Y. 2021) (citation and internal quotation marks omitted) ("[O]nly the protectable portions

of the copyrighted works are compared for substantial similarity."); *see, e.g.*, *Rose v. Hewson*,

No. 17-cv-1471, 2018 WL 626350, at *5 (S.D.N.Y. Jan. 30, 2018) ("there is a serious question

as to whether the plaintiff has plausibly identified a fragment in 'Nae Slappin' that is sufficiently

original to merit copyright protection.").  Given that the Plaintiff appears to be attempting to

protect rhythm, which is generally not protectable, Plaintiff's failure to plead that the similarities

in the parties' compositions include original content is even more surprising.  *See, e.g.*, *Rose*,

2018 WL 626350, at *3 ("Generally, individual notes and common rhythms are not

protectable."); *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015) ("common

rhythms, song structures, and harmonic progressions are not protected"); *Gottwald v. Jones*, No.

11-cv-1432, 2011 WL 4344038, at *5 (S.D.N.Y. Sep. 12, 2011) ("rhythmic pulse" not

copyrightable and therefore not sufficient to make works substantially similar); *see generally N. Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) ("There is only a limited amount of tempos; these appear to have been long since exhausted; originality of rhythm is a rarity, if not an impossibility.").  Because Plaintiff has made no allegations concerning the protectability of the similar elements, the Amended Complaint should be dismissed.[3]

        B.     *An Ordinary Observer Would Not Recognize the Protectable Portions of "Impeach the President" in "Real Love".*

"In most cases, the test for substantial similarity is the so-called ordinary observer test . . . : whether an average lay observer would [] recognize the alleged copy as having been appropriated from the copyrighted work."  *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (citation and internal quotation marks omitted).  In making its comparison of the works at issue, a court is "principally guided by comparing the contested [work]'s total concept and feel with that of the allegedly infringing work, as instructed by [its] good eyes and common sense."  *Peter F. Gaito*, 602 F.3d at 66.

Under the ordinary observer test, a court considers "'whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"  *Gottwald*, 2011 WL 4344038, at *3 (citation omitted).  "In the context of

---

[3] To the extent Plaintiff claims in Paragraph 10 of the Amended Complaint that all portions of the composition of "Impeach the President" are protectable because the work, as a whole, is registered, it is incorrect as a matter of law.  *See e.g.*, *Hines v. BMG Rights Mgmt. (US) LLC*, 694 F. Supp. 3d 341 (S.D.N.Y. 2023) (citation and internal quotation marks omitted) ("[E]ven if Hines holds a valid copyright in Help Me more generally, he may receive protection only for his original additions to a work that is already in the public domain."); *McDonald*, 138 F. Supp. 3d at 454 ("Even a commonplace, public domain melody could become part of a copyrightable musical composition when combined in an original way with other elements of songwriting like harmony, rhythm, and structure.").

music plagiarism, the Second Circuit has described this ordinary observer test as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'" *Pyatt*, 2011 WL 2078531, at *4 (quoting *Repp & K&R Music, Inc. v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).

With this motion, Defendant has submitted to the Court copies of "Impeach the President" and "Real Love." *See Peabody*, 2024 WL 552495, at *2; Milov Dec, Exs. A-B.  As will be clear from an aural comparison of the songs, the works sound so different from one another that a listener of "Real Love" would not recognize any perceptible similarities to "Impeach the President," with respect to the drum rhythms or any other musical element.  This case founders entirely upon simply listening to these two songs, which bear no similarity to one another.  *See Francescatti v. Germanotta*, No. 11-cv-5270, 2014 WL 2767231, at *14-15 (N.D. Ill. June 17, 2014) (internal citation omitted) ("To determine whether the alleged infringing work has captured the total concept and feel of the copyrighted work under the ordinary observer test, courts make 'side-by-side . . . comparisons of works to determine similarity.' Where the works are musical, a court compares them by listening to the music and reviewing the transcriptions of the music to determine whether a reasonable juror could hear the similarities between the songs.").

Due to the differences between the works, the Court should dismiss Plaintiff's Amended Complaint.  *See Gottwald*, 2011 WL 4344038, at *5 ("The music of the two works is not at all similar." ; "Since no 'average lay observer would recognize ['Tik Tok'] as having been appropriated from ['My Slushy'],' the My Slushy Parties' counterclaim must be dismissed."); *Pyatt*, 2011 WL 2078531, at *7 (on motion to dismiss, finding total concept and feel of songs to

differ, such that "average observer would not recognize Usher's lyrics as having been appropriated from Pyatt's 'Court Up'", when "[a] comparison of the two songs illustrates that there are no identical lyrics[, and] [t]he two songs also do not share a common theme."); *see also VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 874 (9th Cir. 2016) ("agree[ing] with the district court that, as a matter of law, a general audience would not recognize the brief snippet in Vogue as originating from Love Break").

C.      *The Fragmented Literal Similarity Test Should Not Be Used, but Even if it Is, the Works are Not Substantially Similar Because Any Use of Plaintiff's Work is Quantitatively and Qualitatively De Minimis*

Courts sometimes apply a different test for substantial similarity when a defendant sampled plaintiff's work.  In these cases, instead of applying the ordinary observer test, courts may apply a "fragmented literal similarity" analysis.  Fragmented literal similarity "refers to exact copying of a portion of a work."  *Ringgold v. Black Entm't Tv, Inc.*, 126 F.3d 70, 75 n. 3 (2d Cir. 1997) (citing Nimmer, § 1303[A][2]).  Thus, courts have applied the fragmented literal similarity test when "parts of the pre-existing work are copied, [for example] note for note, in the new work."  *See, e.g.*, *Broadus*, 2001 WL 984714, at *3; *see also Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998) (in non-sampling case noting that the "'fragmented literal similarity' test . . . focuses upon copying of direct quotations or close paraphrasing").

Here, the court should not apply the fragmented literal similarity test because "Real Love" does not copy "Impeach the President" "note for note" or by "direct quotation[] or close paraphrasing" of any musical elements.  *Broadus*, 2001 WL 984714, at *3; *Castle Rock*, 150 F.3d at 140.  Indeed, as can been seen in the transcriptions above, the kick drum, snare drum, and hi-hat rhythms in the compositions of "Impeach the President" and "Real Love" are different—

indeed, they are broken up by other notes even in Plaintiff's Amended Complaint—such that this is not a case of "note for note" copying. *See Broadus*, 2001 WL 984714, at *3; *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985); Ferrara Dec. ¶¶ 2-4. As such, the fragmented literal similarity test should not be applied and instead the Court should apply "[t]he standard test for substantial similarity," the ordinary observer test, which as discussed above, would find the works not substantially similar as a matter of law. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001).

However, even if the Court applied the fragmented literal similarity test, it should nonetheless find the works not substantially similar and dismiss the Complaint. At the motion to dismiss phase, in assessing fragmented literal similarity, a court "considers whether the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionably copying) has occurred." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 598 (S.D.N.Y. 2013). Here, the works are both quantitatively and qualitatively so different that they cannot support plaintiff's infringement claim.

There is no question that if sampling of "Impeach the President" was done to create "Top Billin'", the quantity of "Impeach the President" that was copied in "Real Love" is *de minimis*. "To establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (quoting *Ringgold*, 126 F.3d at 74). "'In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work,

courts often look to the amount of the copyrighted work that was copied . . . ." *TufAmerica, Inc.*, 968 F. Supp. 2d at 598-99 (quoting *Sandoval*, 147 F.3d at 217).

Here, if "Top Billin'" sampled from "Impeach the President," that sample came from either the first 1.5 beats of bar 1 (at 0:00) or the first 1.5 beats of bar 2 (0:03) of "Impeach the President" because those are the only two sections of the work where the following sounds are isolated and consecutive: a kick drum combined with a closed hi-hat on beat 1; a closed hi-hat with no other element on beat 1&; and a snare that is combined with a closed hi-hat on the first half of beat 2. *See* Ferrara Dec. ¶¶ 2-3. <u>These beats amount to less than 1 second of the composition</u> (0.998 seconds in duration in case sampling of bar 1 happened; 0.996 in case sampling of bar 2 happened). The full "Impeach the President" tracks is 3 minutes and 58.561 seconds long. ***Accordingly, if sampling occurred, the amount sampled of "Impeach the President" in "Top Billin'" amounts to .418% or .417% of the entire "Impeach the President" track***. This astonishingly fleeting amount makes plain that use of "Impeach the President" does not rise above the *de minimis* level. *See WB Music Corp.*, 67 F. Supp. 3d at 595-96 ("The allegedly sampled portion of the Master constitutes only a fraction of a second in a recording that is about 2 minutes and 35 seconds long. Were the Court to find 'oh' quantitatively significant to [the composition] . . . ., it in effect would read the quantitative significance element out of the substantial similarity test. This the Court will not do."); *see also Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (three note sequence, which, when played, lasted six seconds and approximately 2% of entire work, not quantitatively significant). *Cf. Sandoval*, 147 F.3d at 218 ("Because Sandoval's photographs appear fleetingly and are obscured, severely out of focus, and virtually unidentifiable, we find the use of those photographs to be *de minimis*."). Accordingly, the Court should find the works not substantially similar.

15

Plaintiff has made no allegation as to the qualitative importance of the portion of the composition of "Impeach the President" that is at issue in this dispute, as one would have expected when the amount sampled amounts to less than 1 second of a nearly 4-minute composition.  Accordingly, without any such allegations related to the importance of the interpolated composition, and combined with the negligible quantity taken should sampling have occurred at all, the Court should find the works not substantially similar, dismissing the Amended Complaint.  *See TufAmerica*, 968 F. Supp. 2d at 605, 605-06 (internal citation omitted) ("The sequence is in no way 'the heart of the composition,' or in any other way qualitatively important or unique, and it is so insignificant quantitatively that together these factors preclude any finding of actionable infringement based on the use of this sample.").

D.    <em>The UMG Agreement is Irrelevant to Plaintiff's Claims.</em>

With no plausible allegations concerning substantial similarities between the compositions of "Impeach the President" and "Real Love," Plaintiff instead insinuates that Defendant infringes simply because non-party UMG settled Plaintiff's claim of infringement based on "Real Love" having allegedly sampled the *sound recording* of "Impeach the President." *See* Am. Compl. ¶ 22.  According to Plaintiff, Defendant's failure to compensate it for the alleged usage of uncleared samples and compositional elements of "Impeach the President" in the composition of "Real Love" "is difficult to reconcile with the fact that Plaintiff reached an agreement UMG [] with respect to the presence of the uncleared samples from 'Impeach the President' on the master sound recording of 'Real Love.'"  Am. Compl. ¶¶ 21-22.  Plaintiff is confusing the copyright in a sound recording with the copyright in a musical composition.  They are different species of copyrights and protect different types of expression.

For multiple reasons, the UMG Agreement concerning the "Impeach the President" sound recording provides no basis for Plaintiff's claim that Defendant is infringing Plaintiff's copyright in the composition of "Impeach the President." First, a party may enter into a settlement agreement for a variety of reasons that do not relate to an admission or finding of liability. Indeed, the UMG Agreement disclaims any admission of liability or wrongdoing on the part of UMG. Milov Dec., Ex. J. Second, because there exist two separate copyrights in music—one related to the composition of a work and the other to the sound recording (*see supra* n.2)—a work can readily infringe one without infringing the other. As noted above, the copyright in a sound recording protects the actual sounds embodied in a recording, *see* 17 U.S.C. §114(b), where as a copyright in a musical composition protects the melody, harmony, rhythm and other musical elements of a musical composition. *See* 1 Nimmer on Copyright § 2.05[B]. Thus, in *Newton v. Diamond*, the defendant musical group The Beastie Boys licensed "a six-second, three-note segment" of one of Plaintiff's *sound recordings*, but did not obtain a license for the underlying composition, and plaintiff brought suit. 349 F.3d 591. The district court granted summary judgment to the defendants, because the note sequence was unprotectable, and the Ninth Circuit affirmed on the ground that, even assuming the sequence were protectable, the use of the three-note segment was *de minimis* and insufficient to establish liability under the Copyright Act. *Id.* Accordingly, any reference to the UMG Agreement is irrelevant and does not bear on the question of Defendant's alleged infringement of the relevant musical composition.

## III.    THE STATUTE OF LIMITATIONS LIMITS ANY POTENTIAL RECOVERY.

Under § 507(b) of the Copyright Act, a copyright claimant cannot bring suit for relief "unless [the action] is commenced within three years after the claim accrued." 17 U.S.C. § 507.

17

A copyright infringement claim accrues when "the copyright holder discovers, or with due diligence should have discovered, the infringement . . . ." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).  Moreover, a claim for ownership of a copyright, even where disguised as an infringement claim, accrues only once, when the plaintiff knew or should have known of a violation of its ownership.  *See Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011); *Minder Music, Ltd. v. Mellow Smoke Music Co.,* No. 98-cv-4496, 1999 WL 820575, at *1-2 (S.D.N.Y. Oct. 13, 1999) (regardless of whether a plaintiff styles its claim as one for infringement, if ownership is at issue, then the statute of limitations will bar the copyright ownership claim).

Here, it is indisputable that Plaintiff actually knew about its claim more than three years prior to bringing suit.  The UMG Agreement, on which Plaintiff itself relies in its Amended Complaint, states that Plaintiff contacted UMG about the dispute on March 9, 2021, which is more than three years before it filed this suit on April 4, 2024. *See Chambers*, 282 F.3d at 152-53; Milov Dec, Ex. J; Am. Complaint ¶ 22.  Even absent that admission, Plaintiff, active in both the music business and in litigation, assuredly should have known of its claim long prior to suing in April 2024.  The Court may take judicial notice of the fact that "Real Love" has long been considered a huge commercial success.  *See, e.g.*, *Robbins Music*, 107 F. Supp. at 104; Milov Dec. Exs. G-I.  Such popularity and widespread dissemination of "Real Love", dating back *more than thirty years*, should have put any reasonable copyright owner on constructive notice of its claim long ago as a matter of law.  *See Luar Music Corp. v. Universal Music Grp.*, Inc., 847 F. Supp. 2d 299, 310 (D.P.R. 2012) (reasonable party would have discovered claim due to fact "the album Reggaeton Latino, which the Copyrighted Work appears on, has sold over 500,000 units

18

and digital downloads and The Last Don and the Last Done Live have sold millions of units and digital downloads and were certified multi-platinum.").

While Plaintiff attempts to be deliberately vague, it is nevertheless clear that the Amended Complaint contains an ownership claim, which should be wholly barred as untimely given Plaintiff's delay.  For example, Plaintiff now claims that "'Real Love' *is* a compositional interpolation of the drum composition in 'Impeach The President'" Am. Compl., ¶ 16 (emphasis added), and not simply that it uses a portion of the music.  Further, in its second cause of action, Plaintiff seeks a declaration that it owns "Impeach the President"—a red herring given that Defendant is not claiming and has not claimed ownership of "Impeach the President"—and claims that "Real Love" infringes "Impeach the President," because it constitutes a derivative work of "Impeach the President."  Am. Compl. ¶¶ 43, 48.  At least one other court in this district has interpreted a similar claim to be one sounding in ownership.[4]  *See Greene v. Warner Music Grp.*, No. 23-cv-1555 (S.D.N.Y.), ECF Dkt. # 58 ¶¶ 92-101 (second claim alleging that plaintiff is owner of composition and that defendants infringed plaintiff's right to, *inter alia*, create derivative work); *Greene*, No. 23-cv-1555, 2024 WL 3045966, at *13 (S.D.N.Y. June 18, 2024) (interpreting second claim—for declaration of ownership of plaintiff's work and that defendant's

---

[4] Given that Plaintiff is seeking to elide the difference between the "Real Love" sound recording and composition in the Amended Complaint, Plaintiff's approach with non-party UMG is instructive as to the real basis for its claim as to the "Real Love" composition.  The UMG Agreement indicates that Plaintiff claimed ownership of the "Real Love" sound recording. Specifically, when Plaintiff contacted UMG on March 9, 2021, it "demanded . . . a full accounting with corresponding royalty payments for a period covering three (3) years prior to the Notification Date", a remedy only available to a co-owner.  Milov Dec., Ex. J at 1; *see Howard v. Records*, 615 F. Supp. 3d 190, 194 (W.D.N.Y. 2022) (finding claim to be one for ownership because plaintiff "'is claiming ownership over a copyright owned by someone else and is seeking royalty payments in virtue of his asserted ownership.'"); *Weber v. Geffen*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999) (citation and internal quotation marks omitted) ("[T]he duty to account for profits presupposes a relationship as co-owners of the copyright, a relationship plaintiffs are time-barred from asserting.").

19

work was unauthorized derivative work—to "ostensibly represent[] Plaintiff's attempt to assert

an interest in [defendant's work]").  For the reasons described above, Plaintiff's claim accrued

long ago, and, as a disguised ownership claim, it is time barred.  *See, e.g.*, *Charles v. Seinfeld*,

410 F. Supp. 3d 656 (S.D.N.Y. 2019), *aff'd,* 803 Fed. Appx. 550 (2d Cir. 2020).

In the event that the claim is not wholly time-barred, Plaintiff's potential recovery in this

action must be limited to three years of damages prior to filing the Complaint.  *See, e.g.*, *May v.*

*Sony Music Entm't*, 399 F. Supp. 3d 169, 192 (S.D.N.Y. 2019) (granting motion to dismiss in

terms of limiting damages to three years prior to filing suit), *adopted in pertinent part*, 399 F.

Supp. 3d 169 (S.D.N.Y. 2019); *TufAmerica*, 968 F. Supp. 2d at 609 (applying injury rule and

limiting claims to three years prior to filing suit).  Plaintiff cannot reasonably dispute such a

limitation when on March 9, 2021 it contacted UMG, seeking certain information about royalties

earned from the exploitation of "Real Love" for the prior three years.  Milov Dec., Ex. J.

## IV.    PLAINTIFF'S SECOND AND THIRD CLAIMS ARE REMEDIES, NOT CAUSES OF ACTION, AND MUST BE DISMISSED

Plaintiff's second and third causes of action do not state claims and therefore must be

dismissed.  Plaintiff's second cause of action seeks a declaration "that [Plaintiff] is the owner of

all rights in and to the musical composition 'Impeach the President,' and a declaration that

Defendant's ongoing exploitation of the musical composition 'Impeach the President,' through

the incorporation of uncleared samples and corresponding compositional elements from the

musical composition 'Impeach the President' in the musical composition 'Real Love' constitutes

copyright infringement."  Am. Compl. ¶ 48.  "The Declaratory Judgment Act does not create an

independent cause of action.  Rather, '[i]ts operation is procedural only–to provide a form of

relief previously unavailable."  *Johnson v. Magnolia Pictures LLC*, No. 18-cv-9337, 2019 WL

4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (citation omitted).  Because Plaintiff seeks nothing in

this claim that would not be covered by its infringement cause of action, the claim must be dismissed as duplicative. *Smith v. New Line Cinema*, No. 03-cv-5274, 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004) (dismissing claim for a declaration of infringement as duplicative of infringement claim); *see also Neu Prods. Inc. v. Outside Interactive, Inc.*, No. 23-cv-4125, 2024 WL 2992351, at *3 (S.D.N.Y. June 13, 2024) (finding that claim for declaratory judgment that plaintiff owned copyright failed to allege claim under Copyright Act).

Plaintiff's third claim for injunctive relief seeks "preliminary and permanent injunctive relief enjoining and restraining Defendant, and anyone acting at its direction or under its control, from infringing Plaintiff's copyright in the musical composition 'Impeach the President,' pursuant to 17 U.S.C. § 502 and common law principles of contract law." Am. Compl. ¶ 59. "Like a declaratory judgment, 'an injunction is a remedy, not a separate cause of action.'" *Johnson*, 2019 WL 4412483, at *4 n. 4. Accordingly, Plaintiff's third cause of action for injunctive relief must be dismissed. *See Smith*, 2004 WL 2049232, at *5.

## V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH NO FURTHER LEAVE TO AMEND

The Court should deny Plaintiff any further leave to amend. "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Further, "'repeated failure to cure deficiencies' weighs against granting further leave to amend." *Matthews v. City of N.Y.*, No. 23-cv-3959, 2024 WL 4135483, at *9 (S.D.N.Y. Sep. 10, 2024) (Ho, J.).

Here, Plaintiff has long known that its allegations of substantial similarity were insufficient. Further, UMP moved to dismiss Plaintiff's initial Complaint, including in its motion that Plaintiff's claims were barred in full, or in part, by the statute of limitations and that

its second and third causes of actions failed to state claims. Plaintiff, however, addressed none of these infirmities in its Amended Complaint and has thus conceded them. *See Canas v. Whitaker*, No. 19-cv-06031, 2019 WL 2287789, at *5 (W.D.N.Y. May 29, 2019) (citation and internal quotation marks omitted) ("It is well settled in this Circuit that [a] plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). Under these circumstances, further leave to amend would be improper, and the Amended Complaint should be dismissed with prejudice. *See Matthews*, 2024 WL 4135483, at *9; *Vasquez v. Reece Sch.*, No. 1:22-cv-5986, 2024 WL 497433, at *2 (S.D.N.Y. Feb. 8, 2024).

## **CONCLUSION**

For the aforementioned reasons, the Court should grant Defendant's motion to dismiss Plaintiff's Amended Complaint with prejudice. Alternatively, the Court should find that Plaintiff is unable to recover for any alleged infringement prior to April 4, 2021.

Dated: November 12, 2024

COWAN, LIEBOWITZ & LATMAN, P.C.

_____

Richard S. Mandel (rsm@cll.com)
Joelle A. Milov (jam@cll.com)
114 West 47th Street
New York, NY 10036-1525
212.790.9200 (Telephone)
212.575.0671 (Facsimile)

*Attorneys for Defendant Songs of Universal, Inc.*